Denise JACKSON, Appellant,

v.

CREDITWATCH, INC., and Harold
E. "Skip" Quant, Appellees.

No. 2–00–414–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 29, 2002.

Rehearing Overruled Oct. 3, 2002.

Fielding, Parker, Jones & Posey, L.L.P., David Fielding, Nathan B. Schattman, Fort Worth, for Appellant.

Perry–Miller & Blount, L.L.P., Charles W. Blount, Ralph C. Perry–Miller, Dallas, for Appellee.

PANEL B: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant Denise Jackson appeals from the trial court's grant of Appellees Creditwatch, Inc. (Creditwatch) and Harold E. Quant's (Quant) joint motion for summary judgment. We affirm in part and reverse and remand in part.

## I. Background and Procedural Facts

Denise Jackson began working for Creditwatch on August 1, 1991. The following year she was promoted to Branch Manager of the Miami office. She was named Employee of the Month in May 1992, and at the end of the year she received the Manager of the Year award and was promoted to Assistant Vice President. During the same period she was subjected to sexual comments, jokes, and advances by Quant, the President and CEO of Creditwatch. On one occasion in October 1992, Quant told Jackson he "wanted to fuck [her] brains out" and exposed his genitals to her, asking her to "rub his balls."

In 1993, Jackson transferred to Texas and began leasing the corporate house in Tarrant County. Quant continued his sexual comments and innuendos through 1993 and into 1994. In November 1994 Quant

began publicly embarrassing Jackson. On one occasion he yelled at her in front of her co-workers, saying he was "sick and tired of [her] smart anecdotes," and told her to go to her room. Quant believed Jackson had ridiculed him in front of other employees. During November 1994, Jackson decided to move out of the corporate house and to share a coworker's home in order to cut her living expenses.

In late November 1994, Quant failed to list Jackson as a management level employee in the notice of the annual managers' meeting, even though she was Assistant Vice President of Operations. Instead, he publicly posted her name on the list of nonmanagement employees. In January 1995, while on vacation, Jackson learned that she had been demoted. When Jackson argued about the demotion, Quant terminated her employment.

Jackson called the Creditwatch office to find out what kind of references the company would provide. She learned that Creditwatch employees refused to accept reference calls at work and that Quant refused to provide any recommendation letters. In March 1995, the coworker whose home she shared told Jackson to move out because Quant had threatened her with termination of her employment if Jackson did not leave.

Jackson filed an Equal Employment Opportunity Commission (EEOC) complaint and a Texas Commission of Human Rights (TCHR) complaint on or about February 26, 1996, and received an EEOC right to sue letter on March 19, 1996 and a TCHR right to sue letter on May 28, 1996. Jackson filed her original petition on June 17, 1996, alleging sexual harassment, employment discrimination based upon sex, and intentional infliction of emotional distress.

A year later Appellees filed their motion for summary judgment and then a first amended motion for summary judgment. Jackson amended her petition while the motion was pending, dropping her Texas Commission on Human Rights Act (TCHRA)[1] claim. Thus her only live claim at the time of the summary judgment was the common law claim of intentional infliction of emotional distress.

In their amended motion for summary judgment, Appellees argued that the TCHRA preempted and barred Jackson's claim for emotional distress because it was really a sexual harassment claim in disguise and she had failed to pursue administrative remedies. They also argued that Jackson showed no evidence of damages, severe emotional distress, or, within the statute of limitations, outrageous conduct by Quant.

The trial court granted Appellees' amended motion for summary judgment without stating the grounds and denied Jackson's motion for new trial.

## II. Legal Analysis

On appeal, Jackson contends that the trial court erred in holding that the TCHRA preempted her common law claim of intentional infliction of emotional distress and that it was therefore jurisdiction and time-barred (first point); that the trial court erred as a matter of law in finding that Appellees conclusively disproved Jackson's claim of intentional infliction of emotional distress (second point); and that the trial court abused its discretion when it denied her motion for new trial (third point).

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its

---

1. Tex. Lab.Code Ann. § 21.001 et seq. (Vernon 1996).

summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[3] We, therefore, must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[4]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6]

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established.[7] To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material

fact with regard to the element challenged by the defendant.[8]

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[9] To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[10] When the summary judgment order does not include the specific grounds for the ruling, the judgment may be affirmed on any meritorious theory presented in the motion.[11]

### B. Preemption by TCHRA

█ If the trial court properly held that Jackson's claim was preempted and barred by the TCHRA, then the first ground asserted by Appellees in their joint motion for summary judgment is dispositive of this appeal. We therefore first address whether the TCHRA preempts common law causes of action that arise from a discriminatory employment practice.

In deciding a case of first impression, the San Antonio Court of Appeals addressed this exact issue.[12] As the *Perez* court pointed out, the TCHRA prohibits employment discrimination on the basis of

2. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

3. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

4. *Great Am.*, 391 S.W.2d at 47.

5. *Rhone–Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

6. *Great Am.*, 391 S.W.2d at 47.

7. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999).

8. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

9. *KPMG Peat Marwick*, 988 S.W.2d at 748.

10. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996).

11. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

12. *Perez v. Living Centers–Devcon, Inc.*, 963 S.W.2d 870 (Tex.App.-San Antonio 1998, pet. denied).

"race, color, disability, religion, sex, national origin, or age."[13] The act essentially codified federal employment law.[14] Like Appellees, the defendant in *Perez* asserted that the TCHRA serves as the exclusive state-law remedy for conduct it proscribes, relying on *Schroeder v. Texas Iron Works, Inc.*[15]

The *Perez* court pointed out that in *Schroeder*, the Texas Supreme Court considered only the TCHRA in its analysis of plaintiff Schroeder's claim.[16] Noting that no other law applied to Schroeder's claim, the Court considered whether Schroeder had to exhaust his administrative remedies under the TCHRA before he could sue under that law.[17] The Court did not address whether the TCHRA precludes suit under the common law for causes of action that arise from the same facts as employment discrimination. Consequently, the *Perez* court did not hold that the *Schroeder* court's language regarding the exclusivity of the TCHRA's remedial system controlled the disposition of Perez's common law claims.[18]

The *Perez* court examined the legislative history and legislative intent behind the enactment of the TCHRA and concluded:

Notably, neither an intent to serve as an exclusive remedy, nor an intent to preclude common law causes of action, is contained within the stated purposes of the TCHRA. Additionally, the statute contains no provision that implies the

TCHR's administrative review system precludes a lawsuit for common law causes of action. Instead, the opposite proposition can be implied from section 21.211.

Section 21.211, Election of Remedies, provides that

[a] person who has initiated an action in a court of competent jurisdiction or who has an action pending before an administrative agency under other law or an order or ordinance of a political subdivision of this state based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the same grievance.

If the modifying language in the above paragraph is omitted, this provision implies that an aggrieved employee may sue for a common law cause of action that arises from the same facts as a discriminatory employment practice without filing a complaint with the TCHR. With the modifying language omitted, the provision reads:

[a] person who has initiated an action in a court of competent jurisdiction ... based on an act that would be an unlawful employment practice under this chapter may not file a complaint under this subchapter for the same grievance.

Rather than preclude other causes of action that might arise from an employ-

---

**13.** *Id.* at 872; see also Tex. Lab.Code Ann. § 21.052 (Vernon 1996).

**14.** *Compare* 42 U.S.C.A. § 2000e (West 1994) (prohibiting employment discrimination on the basis of race, color, religion, sex or national origin), 42 U.S.C.A. §§ 12101–12213 (West 1995) (prohibiting employment discrimination on basis of disability), *and* 29 U.S.C.A. §§ 621–34 (West 1999) (prohibiting employment discrimination on basis of age), *with* Tex. Lab.Code Ann. § 21.052 (Vernon

1996) (prohibiting same conduct); *Perez*, 963 S.W.2d at 872.

**15.** *Perez*, 963 S.W.2d at 872 (citing *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991)).

**16.** *Perez*, 963 S.W.2d at 872.

**17.** *Schroeder*, 813 S.W.2d at 485–88.

**18.** *Perez*, 963 S.W.2d at 872–73.

ment practice made unlawful by the TCHRA, this language implies that a plaintiff cannot have two bites at the apple. That is, a plaintiff cannot first sue a defendant-employer for a non-TCHRA cause of action for conduct arising from the same facts as employment discrimination and then pursue a claim of employment discrimination through the administrative review system established under the TCHRA; or, a plaintiff cannot elect to pursue an administrative remedy under some other administrative review system, and then file with the TCHR as well. This provision requires a plaintiff to pick a remedy and permits a plaintiff like Perez to pursue common law causes of action that arise from the same facts as sexual harassment.[19]

We agree with the San Antonio Court of Appeals. Consequently, we hold that the TCHRA does not preempt Jackson's claim of intentional infliction of emotional distress even if it arose from the same facts as her sexual harassment claim. Her failure to exhaust remedies under the TCHRA has no effect on her claim for intentional infliction of emotional distress. A decision to grant summary judgment on this ground would have been error, as Jackson alleged in her first point. To the extent that the trial court based its decision on this ground, we sustain Jackson's first point. But because the summary judgment order does not list the specific ground or grounds for the ruling, and because Appellees asserted another ground in their motion for summary judgment, our inquiry does not end here.[20]

## C. Intentional Infliction of Emotional Distress

In her second point, Jackson contends that the trial court erred to the extent that it held that Appellees conclusively disproved her claim of intentional infliction of emotional distress. Appellees are entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of Jackson's intentional infliction of emotional distress cause of action cannot be established.[21]

### 1. Preservation of Limitations Defense

■ Appellees argued in their motion for summary judgment that summary judgment was proper because Jackson suffered no damages and no severe emotional distress and Quant did not commit extreme and outrageous conduct. Their argument posited that the two-year statute of limitations on claims of intentional infliction of emotional distress barred all of Jackson's complaints about Quant's alleged acts that occurred more than two years before Jackson filed her petition; that is, more than two years before June 17, 1996.[22] Quant's alleged acts that occurred on or after June 17, 1994 are his yelling at Jackson and then refusing to speak to her, his placing her name on the list of non-management personnel, his terminating her employment and refusing to write a letter of recommendation, and his forcing the coworker whose home she shared to tell her to move out. These actions, Appellees argue, do not amount to extreme and outrageous conduct required to show intentional infliction of emotional distress.

19. *Id.* at 873–74 (citations omitted).

20. *See Carr,* 776 S.W.2d at 569.

21. *See Elliott–Williams Co.,* 9 S.W.3d at 803.

22. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.2002); *Matlock v. McCormick,* 948 S.W.2d 308, 311 (Tex.App.-San Antonio 1997, no writ); *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 211 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

Jackson replies that Appellees did not specifically raise limitations in their motion for summary judgment and have thus waived it as to acts occurring more than two years prior to the filing date of the petition. We disagree. While Appellees did not argue Jackson's entire cause of action was time-barred, they did argue in the portion of their motion for summary judgment dealing with Jackson's failure to show emotional distress and her failure to show that Quant acted outrageously that those actions that occurred more than two years before Jackson filed her petition were barred. Appellees thus preserved that affirmative defense.[23]

### 2. Availability of Continuing Tort Doctrine

Jackson also argues that the continuing tort doctrine should apply, and that we should consider the acts that allegedly occurred prior to June 17, 1994 in determining whether the tort occurred. Along with other courts of appeals, we have previously held that the continuing tort doctrine is available for intentional infliction of emotional distress claims.[24] As the Austin Court of Appeals explained in a divorce action,

A continuing tort is "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." This case does not involve acts that are "complete in themselves," but involves a continuing course of conduct

which over a period of years caused injury. "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it seems proper to regard the cumulative effect of the conduct as actionable." [25]

For the doctrine to apply, a tortious act must occur within the two years before suit was filed.[26] Appellees argued in their brief that no act after June 17, 1994, two years before the date Jackson filed her original petition, was tortious. As explained below, this assertion is incorrect; a jury could find that orchestrating her eviction was a tortious act, and that act occurred well within the two-year period. We therefore hold that the continuing tort doctrine does apply. This holding, however, does not automatically allow Jackson to pursue *damages* for any act occurring before June 17, 1994, two years before the date she filed her original petition.

In the appellate courts which have addressed it, the relationship between the doctrine and damages is mixed. The Austin Court of Appeals, in *Twyman,* upheld the recovery of damages for acts occurring more than two years before the petition for divorce was filed.[27] The El Paso Court of Appeals held that the evidence of acts occurring more than two years before the filing date may be relevant contextual background concerning the acts falling within the two-year period and also may be relevant in establishing the elements of the cause of action.[28] But it also held that

---

23. See Tex.R. Civ. P. 94.

24. *Newton v. Newton,* 895 S.W.2d 503, 506 (Tex.App.-Fort Worth 1995, no writ); *Toles v. Toles,* 45 S.W.3d 252, 262 (Tex.App.-Dallas 2001, pet. denied); *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.-Austin 1990), *rev'd on other grounds,* 855 S.W.2d 619 (Tex.1993).

25. *Twyman,* 790 S.W.2d at 821 (citations omitted).

26. *Bhalli,* 896 S.W.2d at 211–12.

27. 790 S.W.2d at 821.

28. *Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671, 677 (Tex.App.-El Paso 1997, writ denied).

such evidence cannot be the basis for recovery.[29] The Supreme Court of Texas has cited the El Paso court's opinion for this proposition in dicta in a suit involving intentional infliction of emotional distress in the workplace.[30]

We believe that the El Paso Court of Appeals's view on this issue is the better view under the specific facts of this case. We therefore hold that under the specific facts of this case, acts occurring before June 17, 1994 cannot form the basis for damages. They can, however, be used to show the jury the background and context of the act or acts occurring within the period that may have been tortious, Jackson's mental and financial state during the relevant period, and proof of all elements of the tort.

Because Jackson cannot recover damages for any of Appellees' acts occurring before June 17, 1994, we hold that the summary judgment was proper as to all of those acts. We overrule Jackson's second point to the extent that it complains that the summary judgment was improper as to Appellees' behavior and possible causes of action accruing before June 17, 1994.

### 3. The Tort

#### a. The Elements

▇ The tort of intentional infliction of emotional distress is composed of the following elements: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.[31]

#### b. Intentional Infliction of Emotional Distress in the Workplace

▇ An employee may recover damages for intentional infliction of emotional distress in an employment context. The employee, however, must prove the well-established elements of the cause of action.[32] Courts must determine as a threshold matter whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.[33] To be extreme and outrageous, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and it must be regarded as atrocious and utterly intolerable in a civilized community.[34]

In reviewing Jackson's action for intentional infliction of emotional distress against her former employer, we are guided by the opinion in *GTE Southwest*.[35] In that opinion, the Supreme Court of Texas adopted a strict approach to emotional distress claims arising in the workplace, explaining that to manage a business properly, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees.[36] The court pointed out that "[a]lthough many of these acts are necessarily unpleasant for the employee,

---

**29.** *Id.*

**30.** *GTE Southwest v. Bruce*, 998 S.W.2d 605, 619 (Tex.1999).

**31.** *Id.* at 611; *Twyman*, 855 S.W.2d at 621–22; *Behringer v. Behringer*, 884 S.W.2d 839, 841 (Tex.App.-Fort Worth 1994, writ denied).

**32.** *GTE Southwest*, 998 S.W.2d at 611; *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 404 (Tex.App.-El Paso 2002, no pet.).

**33.** *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216–17 (Tex.2000).

**34.** *Id.* at 217.

**35.** 998 S.W.2d at 611.

**36.** *Id.* at 612.

an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results."[37] Even when a supervisor abuses a position of power over an employee, the employer will not be liable for mere insults, indignities, or annoyances that are not extreme and outrageous.[38]

The Supreme Court of Texas nevertheless noted that liability may arise when one in a position of authority engages in repeated or ongoing harassment of employees if the cumulative quality and quantity of the harassment is extreme and outrageous.[39] When such repeated or ongoing harassment is alleged, the offensive conduct is evaluated as a whole.[40] The court then observed that whether a defendant's conduct is so extreme and outrageous as to permit recovery is a question of law for the court, in the first instance, to decide.[41]

The *GTE Southwest* court held that the conduct complained of by the Bruce plaintiffs was extreme and outrageous. The supervisor's conduct there included using harsh and vulgar obscenities; repeatedly physically and verbally threatening and terrorizing employees; "charging" employees by rushing up to them with balled fists and lowered head, stopping uncomfortably close to them while yelling; pounding fists; flying into a rage because one employee left her purse on a chair and another her umbrella on a filing cabinet; repeatedly threatening to terminate employees without justification; forcing an employee to stand in front of him for as long as thirty minutes while he reviewed papers and talked on the phone; screaming when he discovered a spot on the carpet, forcing an employee to clean spots on the carpet while on her hands and knees; forcing employees to vacuum nightly although GTE employed a janitorial service for that purpose; and forcing an employee to wear a post-it on her shirt that said, "Don't forget your paperwork."

In holding that this conduct rose to the level of intentional infliction of emotional distress, the court explained:

> We recognize that, even when an employer or supervisor abuses a position of power over an employee, the employer will not be liable for mere insults, indignities, or annoyances that are not extreme and outrageous. But [the supervisor's] ongoing acts of harassment, intimidation, and humiliation and his daily obscene and vulgar behavior, which GTE defends as his 'management style,' went beyond the bounds of tolerable workplace conduct. The picture painted by the evidence at trial was unmistakable: [the supervisor] greatly exceeded the necessary leeway to supervise, criticize, demote, transfer, and discipline, and created a workplace that was a den of terror for the employees. And the evidence showed that all of [his] abusive conduct was common, not rare. Being purposefully humiliated and intimidated, and being repeatedly put in fear of one's physical well-being at the hands of a supervisor is more than a mere triviality or annoyance.[42]

The evidence outlined in *GTE Southwest* is far in excess of that described by Jackson. Reviewing the evidence in a light favorable to Jackson, we hold that, within

---

37. *Id.*

38. *Id.* at 617.

39. *Id.* at 616.

40. *Id.* at 616.

41. *Id.*

42. *Id.* at 617 (citations omitted).

the two-year period preceding the filing of her petition, her workplace, although unpleasant and uncomfortable, was not the ring of hell described in *GTE Southwest.* We therefore hold that the trial court could have correctly deduced that Appellees conclusively disproved the element of extreme and outrageous conduct during the course of Jackson's employment that falls within the two-year statute of limitations. As a result, we cannot say that the trial court erred if it granted Appellees' motion for summary judgment on that basis. To the extent that Jackson complains that the summary judgment was improper as to Appellees' conduct during her employment, we overrule this point. The conduct occurring *after* Jackson's discharge, however, is another matter.

### c. Appellees' Conduct after Jackson's Termination—The Eviction

The only conduct remaining that Jackson could complain of is Appellees' conduct after her termination but within the two-year period of limitations—her eviction. We must therefore decide whether Jackson raised a fact issue for each challenged element of the tort—outrageous conduct, severe emotional distress, and damages— in her evidence regarding that conduct.

### i. Outrageous Conduct and Severe Emotional Distress

 Whether a defendant's actions may reasonably be considered so extreme and outrageous as to permit recovery is initially a question of law.[43] But when reasonable minds could disagree, it is for the jury to determine whether, in a partic-

ular case, the conduct is sufficiently extreme and outrageous to result in liability.[44] The same standards are applied to a determination of severe emotional distress.[45]

Jackson had moved in with a coworker, Terri Blevins, to save money while she was still employed by Creditwatch. Quant knew that Jackson had left the corporate apartment because she needed to save money. Quant expressed dissatisfaction with the living arrangements to Blevins almost immediately after he terminated Jackson. Two months later, he threatened to fire Blevins unless she evicted Jackson.

On March 6, 1995, Blevins received a company email forbidding her to contact former employees, including Jackson. In encouraging her to change her living arrangements, Quant stated, "You are bought and paid for." He then explained that he expected her to evict Jackson. Annegret Werle, former Executive Vice President and Secretary/Treasurer of Creditwatch, Inc., and Quant's confidant, told Blevins that her employment was in jeopardy if she did not kick Jackson out. Blevins, a single mother who could not afford to lose her job, asked Jackson to move out that evening. Jackson moved out the next day.

Jackson was not an employee of Creditwatch at that time, and the record reflects that her emotional distress claim for this conduct was outside the employment context.[46] Quant's action cannot be justified, then, as necessary to managing a business properly by being able to supervise, review, criticize, demote, transfer, and disci-

---

**43.** *Id.; Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); *Toles,* 45 S.W.3d at 261.

**44.** *GTE Southwest,* 998 S.W.2d at 616; *Toles,* 45 S.W.3d at 261; *Gonzales v. Willis,* 995 S.W.2d 729, 735 (Tex.App.-San Antonio 1999, no pet.).

**45.** *Fields v. Teamsters Local Union No. 988,* 23 S.W.3d 517, 530 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

**46.** *See GTE Southwest,* 998 S.W.2d at 612.

pline employees. We hold that reasonable minds could differ as to whether Quant's conduct was extreme and outrageous enough to result in liability; Jackson has thus raised a fact issue on this element for a jury to determine.[47]

 Emotional distress includes all extremely negative mental reactions—fright, humiliation, embarrassment, anger, worry, and nausea.[48] To satisfy this element, the distress must be so severe that no reasonable person would be expected to put up with it.[49] But proof of such feelings as depression, confusion, fright, and anger and changes in physical appearance and demeanor can establish this element even if no medical treatment is sought.[50]

 The record reflects that Jackson was put out of her home and forced to find a new place to live and that she suffered humiliation, embarrassment, fear, worry, and loss of sleep. The record also reflects that she was in an edgy emotional state because of prior actions by Quant and Creditwatch. We hold that reasonable minds could differ as to whether Jackson suffered severe emotional distress; Jackson has thus raised a fact issue on this element for a jury to determine.[51]

### ii. Damages

Without citing any law, Appellees summarily argue that they "negated the neces-sary element of damages which accompany all claims for tort." Appellees first demonstrated Jackson's claims of emotional distress were not of the severity to be rewarded by the courts as set forth above, and second presented to the court the Plaintiff's evidence of damage was insufficient. Appellees' argument is without merit.

 Any party seeking recovery of mental anguish damages must prove more than "mere worry, anxiety, vexation, embarrassment, or anger."[52] Mental anguish includes mental pain caused by, among other things, indignation, wounded pride, severe disappointment, and despair.[53] When the mental pain rises to the level that the plaintiff loses the ability to function in her daily life as she did before the injury, mental anguish damages can be awarded.[54]

 The record reflects that Jackson was in a fragile state when she was terminated because of Creditwatch and Quant's actions. After her employment ended, the record reflects that she was extremely anxious, stressed, and sleep-deprived. In the same month of her termination, her roommate told her that Quant did not like their living situation, so she knew her living situation was in jeopardy even before she was evicted and forced to find a new

47. See *LaCoure v. LaCoure*, 820 S.W.2d 228, 233–34 (Tex.App.-El Paso 1991, writ denied).

48. *GTE Southwest*, 998 S.W.2d at 618; *Toles*, 45 S.W.3d at 262; *Washington v. Knight*, 887 S.W.2d 211, 216 (Tex.App.-Texarkana 1994, writ denied).

49. *Toles*, 45 S.W.3d at 263.

50. *Higginbotham v. Allwaste*, 889 S.W.2d 411, 417 (Tex.App.-Houston [14th Dist.], 1994, writ denied); *Am. Med. Int'l, Inc., v. Giurintano*, 821 S.W.2d 331, 343 (Tex.App.-Houston [14th Dist.] 1991, no writ); *State Farm Mut.*

*Auto. Ins. Co. v. Zubiate*, 808 S.W.2d 590, 600–01 (Tex.App.-El Paso 1991, writ denied); *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 460 (Tex.App.-Austin 1989, no writ).

51. See *LaCoure*, 820 S.W.2d at 233–34.

52. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995); *McLure v. Tiller*, 63 S.W.3d 72, 83 (Tex.App.-El Paso 2001, pet. filed).

53. *Ortiz v. Furr's Supermarkets*, 26 S.W.3d 646, 653 (Tex.App.-El Paso 2000, no pet.).

54. *Id.*

place to live. Jackson has provided enough evidence for the assessment of damages to raise a fact issue.

Because there were genuine issues of material fact, the trial court erred in granting Appellees' motion for summary judgment as to any intentional infliction of emotional distress occurring as a result of the forced eviction. The court also abused its discretion in denying Jackson's motion for new trial on this same narrow ground. We therefore sustain Jackson's second and third points only on this narrow ground.

### III. Conclusion

The TCHRA did not preempt or bar Jackson's claim of intentional infliction of emotional distress; the trial court erred to the extent that it granted summary judgment on this ground. Appellees conclusively disproved all of Jackson's claims of intentional infliction of emotional distress that accrued on or before Jackson's termination date of January 3, 1995. To the extent that the trial court granted summary judgment on this ground, we affirm as to those claims only.

But because genuine issues of material fact exist regarding Appellees' conduct in threatening to fire Jackson's housemate if she did not evict Jackson, Appellees did not conclusively disprove Jackson's claims of intentional infliction of emotional distress accruing after her termination. The trial court erred by granting summary judgment on those claims. We reverse the trial court's judgment as to those claims only and remand this case to the trial court for trial on those claims.

CAYCE, C.J. dissents without opinion.