CREDITWATCH, INC. & Harold E.
"Skip" Quant, Petitioners,

v.

Denise JACKSON, Respondent.

No. 02–1076.

Supreme Court of Texas.

Argued Oct. 19, 2004.

Decided Feb. 25, 2005.

Ralph C. Perry–Miller, Vial Hamilton Koch & Knox, LLP, Marlow James Muldoon, Perry–Miller & Associates, P.C., Dallas, for petitioners.

Nathan Butler Schattman, E. David Fielding, Fielding Parker & Beck, L.L.P., Fort Worth, for respondent.

Justice BRISTER delivered the opinion of the Court.

For the tenth time in little more than six years, we must reverse an intentional infliction of emotional distress claim for failing to meet the exacting requirements of that tort.[1]

Denise Jackson filed suit against Creditwatch, Inc. and its chief executive officer, Harold E. "Skip" Quant, on June 17, 1996.[2] Initially, she alleged numerous acts of sexual harassment in violation of the Texas

---

**1.** See *Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 441 (Tex.2004); *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 737 (Tex.2003) (per curiam); *Tiller v. McLure,* 121 S.W.3d 709, 710–11 (Tex.2003) (per curiam); *Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 606 (Tex.2002); *Bradford v. Vento,* 48 S.W.3d 749, 751–52 (Tex.2001); *City of Midland v. O'Bryant,* 18 S.W.3d 209, 211 (Tex.2000); *Brewerton v. Dalrymple,* 997 S.W.2d 212, 213–14 (Tex.1999); *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 63 (Tex.1998); *Southwestern Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 53 (Tex. 1998) (per curiam).

**2.** Jackson's suit was joined by Brenda Simcox, and later by Terri Blevins, both Creditwatch employees asserting similar claims. After the trial court granted summary judgment on Jackson's claims, the other employees' claims were settled during trial.

Commission on Human Rights Act (TCHRA),[3] but withdrew those claims when the defendants moved for summary judgment based on limitations.[4]

In her amended complaint, Jackson alleged only an intentional infliction of emotional distress claim, still based on Quant's sexual advances and on retaliatory conduct allegedly continuing even after her termination on January 3, 1995. The defendants continued to press their motion for summary judgment, asserting the sole remaining claim was barred by (1) preemption, (2) limitations, and (3) no evidence of outrageous conduct. The trial court granted the motion, and Jackson appealed.

The court of appeals (one justice dissenting) affirmed the summary judgment as to pre-termination conduct, holding Jackson's affidavits described an "unpleasant and uncomfortable" workplace but not "the ring of hell" required to establish an intentional infliction claim.[5] But the court reversed and remanded for trial her infliction claim based on post-termination conduct.[6] Applying the usual standard of re-

view,[7] we reverse for two of the reasons stated in the defendants' motion.[8]

■ First, assuming the court of appeals is correct that nothing in the TCHRA preempts other common-law causes of action,[9] the tort involved here nevertheless has its own boundaries. As we recently reiterated, intentional infliction of emotional distress is a "gap-filler" tort never intended to supplant or duplicate existing statutory or common-law remedies.[10] Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill.

■ Here, Jackson's complaints all stemmed from Quant's lewd advances, including the subsequent retaliation that often follows when offensive advances are refused.[11] Jackson suggests no other reason for Quant's actions. As her complaints are covered by other statutory remedies, she cannot assert them as intentional infliction claims just because those avenues may now be barred.[12]

**3.** *See* Tex. Lab.Code §§ 21.001–.556.

**4.** *See id.* § 21.202 (requiring administrative complaint to be filed within 180 days of occurrence); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996) (per curiam) (holding failure to file timely administrative complaint bars suit).

**5.** 84 S.W.3d 397, 407.

**6.** *Id.* at 407–08.

**7.** *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n. 137 (Tex.2004) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003) (reviewing summary judgment de novo, viewing all evidence in nonmovant's favor to see if no genuine issue of material fact exists and movant is entitled to judgment as a matter of law)).

**8.** On the third, limitations, the court of appeals held Quant's acts more than two years

before suit could not form the basis for damages, but were admissible as "background and context." 84 S.W.3d at 405. As the defendants do not appeal that ruling, we do not reach the court of appeals' invocation of the "continuing tort doctrine," a doctrine we have neither endorsed nor addressed, but that has been used by some courts of appeals to toll limitations until the last act of intentional infliction occurs. *See Toles v. Toles*, 45 S.W.3d 252, 262 (Tex.App.-Dallas 2001, pet. denied); *Newton v. Newton*, 895 S.W.2d 503, 506 (Tex.App.-Fort Worth 1995, no writ); *Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex.App.-Austin 1990), *rev'd on other grounds*, 855 S.W.2d 619 (Tex.1993).

**9.** 84 S.W.3d at 403.

**10.** *Zeltwanger*, 144 S.W.3d at 447.

**11.** *See id.* at 448–49.

**12.** *Id.* at 447.

■ Second, we disagree with the court of appeals' conclusion that some of the defendants' post-termination actions were sufficiently outrageous to constitute intentional infliction. It is for the court to determine in the first instance whether conduct is extreme and outrageous, and such claims are submitted to a jury only when reasonable minds may differ.[13] Even assuming the acts alleged here were independent of Jackson's sexual harassment claims,[14] they do not rise to the level necessary to establish the tort.

■ The court of appeals recognized that intentional infliction claims do not extend to ordinary employment disputes,[15] but concluded that such disputes end upon termination.[16] But some employment disputes are not so easily ended.[17] As a result, while post-termination conduct may constitute intentional infliction if it goes "beyond all possible bounds of decency,"[18] "ordinary" post-termination disputes are insufficient to support liability.[19]

■ Here, Jackson alleged that Quant refused to give her a reference letter, and other Creditwatch employees declined to take reference calls on her behalf during business hours. She also complains of a company-wide email stating a general policy forbidding employees to contact ex-employees. Even assuming all of these actions were the result of a vendetta directed at Jackson, we hold this post-termination conduct is legally insufficient.[20]

■ Finally, the court of appeals reversed based on a post-termination eviction allegedly orchestrated by Creditwatch. Shortly before her termination, Jackson had moved out of corporate housing due to financial difficulties, and into the home of another Creditwatch manager, Terri Blevins, who provided shelter *gratis.* Viewing the evidence in the light most favorable to Jackson, two months after the termination Quant told Blevins to evict Jackson, and implied that Blevins' own job was in jeopardy if she did not. Blevins complied, and Jackson moved elsewhere the next day.

■ Assuming all this is true, it was callous, meddlesome, mean-spirited, officious, overbearing, and vindictive—but not "so outrageous in character, and so ex-

---

13. *Id.* at 445; *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 616 (Tex.1999).

14. *See Zeltwanger,* 144 S.W.3d at 448–49 (expressing skepticism but not deciding whether subsequent retaliatory acts were independent of sexual harassment claim).

15. 84 S.W.3d at 405–06; *see also GTE Southwest,* 998 S.W.2d at 612–13.

16. 84 S.W.3d at 407.

17. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 612 (Tex.2002) (holding employer's post-termination reports about employee to federal and state agencies insufficient to establish intentional infliction absent proof that employer violated any laws or knew reports were false); *Wornick Co. v. Casas,* 856 S.W.2d 732, 735–36 (Tex.1993) (holding that having security guard escort termi-

nated employee from premises insufficient to establish intentional infliction).

18. *Zeltwanger,* 144 S.W.3d at 445 (citing *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993)) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

19. *Sears,* 84 S.W.3d at 611; *see also Wornick,* 856 S.W.2d at 735 (holdings acts within legal rights cannot constitute outrageous behavior).

20. *See Sears,* 84 S.W.3d at 612 (holding personal vendetta insufficient to constitute intentional infliction if act taken was not outrageous); *see also* Restatement (Second) of Torts § 46 cmt. g ("The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.").

treme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." [21] Roommates—sadly, even family members—may find mutual living arrangements unsuitable, and juries generally need not decide which evictions are tortious absent conditions much more "intolerable" than those involved here. Moreover, Texas law already recognizes claims for wrongful eviction and tortious interference with contract, neither of which allow mental anguish damages.[22] Intentional infliction claims cannot be used "to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." [23] Accordingly, we hold Jackson may not assert such a claim here.

* * *

We certainly understand judicial reticence to dismiss claims like this one stemming from heinous acts. But except in circumstances bordering on serious criminal acts, we repeat that such acts will rarely have merit as intentional infliction claims.[24]

This tort was never intended as an easier and broader way to pursue claims already protected by our expanding civil and criminal laws. If the tort is to remain viable where "gaps" still remain, litigants and judges cannot entertain it as a catch-all that avoids the careful balancing behind alternate legal claims.

Accordingly, we reverse that part of the court of appeals' judgment remanding Jackson's claims, and render judgment that she take nothing.

**21.** *Zeltwanger,* 144 S.W.3d at 445 (citing *Twyman,* 855 S.W.2d at 621) (quoting Restatement (Second) of Torts § 46 cmt. d).

**22.** *See* Tex. Prop.Code § 92.0081 (providing for lockout damages of one month's rent plus $500, actual damages, court costs, and reasonable attorney's fees); *Am. Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990) (holding damages for tortious interference with contract are the same as damages for breach of contract interfered with, thus putting claim-

ant in same economic position as if contract had been performed).

**23.** *Zeltwanger,* 144 S.W.3d at 447 (quoting *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex.1998)).

**24.** *See, e.g., Morgan v. Anthony,* 27 S.W.3d 928, 930–31 (Tex.2000); *GTE Southwest v. Bruce,* 998 S.W.2d 605, 613–14, 617 (Tex. 1999).