# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-19-00307-CV**
**NO. 03-19-00352-CV**

---

**Stetson Roane, Appellant**

**v.**

**Halcy Martin Dean, Appellee**

---

**FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-18-005721, THE HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In the interlocutory appeal No. 03-19-00307-CV and permissive interlocutory appeal No. 03-19-00352-CV, consolidated for purposes of briefing and consideration, Stetson Roane challenges the trial court's denial of his plea to the jurisdiction on multiple grounds. In the permissive interlocutory appeal, Roane argues that Halcy Martin Dean's intentional infliction of emotional distress (IIED) claim was preempted by the Texas Commission on Human Rights Act (TCHRA), codified at chapter 21 of the Texas Labor Code.[1] We conclude that binding precedent dictates that Dean's IIED claim is preempted by the TCHRA. Accordingly,

---

[1] "Courts have referred to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act (TCHRA or CHRA); however, the Commission on Human Rights has been replaced with the Texas Workforce Commission civil rights division." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (citing Tex. Lab. Code § 21.0015). Nevertheless, following the Texas Supreme Court, we will continue to refer to chapter 21 as the TCHRA for ease of reference and continuity with the case law. *See id.* (using "TCHRA," "Chapter 21," and "the Act" interchangeably).

we reverse the trial court's order at issue in the permissive interlocutory appeal No. 03-19-00352-CV and render judgment granting Roane's plea and dismissing Dean's sole claim against him. We dismiss as moot the interlocutory appeal No. 03-19-00307-CV.

## BACKGROUND

Dean is the director of special education for Seguin Independent School District (Seguin ISD). Roane was Seguin ISD's superintendent. His wife Nancy Graves was Dean's immediate supervisor at Seguin ISD and reported directly to Roane.

In 2018, Dean sued Roane for IIED, making the following allegations in her live petition. Dean was planning on attending a professional conference in Austin on January 17, 2017. Roane also indicated that he would like to attend and requested that Dean reserve a hotel room for him. Dean booked Roane a hotel room at a separate hotel from her own. Roane did not attend any conference session, arrived after 5:00 p.m., and arranged a business dinner with Dean and her colleagues. After the dinner, Roane insisted on accompanying Dean to her own hotel for her safety, which Dean said was unnecessary but acquiesced because Roane "held a position of authority and power" over her and she did not "wish to offend" him. Upon walking Dean to her hotel, Roane insisted on entering Dean's room and began to disrobe, discussing his need for "release" and Dean's attractiveness. Dean attempted to redirect by talking about her good work relationship with Graves. Roane replied that he was "tired of her" and needed "someone young, hot and smart" like Dean. Dean then began to boast about his sexual abilities, described explicitly how he could pleasure Dean sexually, and stated that they were similar by being married to "old people." Dean responded that she would not be unfaithful to her husband, could only be "work friends" with Roane, and could not, as an employee, engage in a sexual

2

relationship with him. Roane continued to offer to perform oral sex on Dean, and Dean continued to say "no" repeatedly. Finally, Dean gathered Roane's clothes and told him he would need to get dressed and leave, which Roane did.

Dean alleged that five days later she was hospitalized for chest pains, difficulty breathing, and high fever, and that she continued to experience "fear and anxiety" going forward. Dean explained that this hotel room incident created an "immediate, very uncomfortable and disturbing work environment" for her, especially given her work relationship with both Roane and Graves. Based on statements Dean had heard from and about Roane regarding how he would treat employees who crossed him, she was "fearful" of how he might treat her and "became afraid to go to her office" or "venture out of her own office, for fear she might run into" Roane or Graves, "believ[ing] and fear[ing]" that Roane "had the ability to do whatever he wanted with regard to her position with the district" as she was an "at will" employee. Then, on February 28, Dean filed an administrative complaint with Seguin ISD, which placed Roane on administrative leave.

Dean also claimed that following Roane's placement on administrative leave, Graves began to remark to others that she was "having concerns about [Dean]'s work performance" and commented on the number of employees who had left Dean's department, even though she had only made positive statements regarding Dean's performance before the incident. Graves then began refusing to attend routine meetings with Dean, and the acting superintendent publicly removed Dean from an administrative meeting upon Graves's request. Dean was hospitalized two more times that spring for chest pains that were later diagnosed as extensive stress and began seeing a therapist. Graves was then removed as Dean's direct supervisor. Finally, Dean alleged that "Seguin ISD's investigation into Roane's conduct

3

devolved into other issues, and, prior to any conclusive findings on [Dean]'s allegations," Roane and Graves resigned. According to Dean, the resignations rendered Dean's grievance moot.

Roane responded to Dean's live petition with a plea to the jurisdiction, claiming that Dean's IIED claim is preempted by the TCHRA, that Dean failed to exhaust administrative remedies against a professional employee of a school district as required by section 22.0514 of the Texas Education Code, and that Roane is entitled to immunity under section 101.106(f) of the Texas Civil Practice and Remedies Code. Roane also moved to dismiss Dean's IIED claim under rule 91a of the Texas Rules of Civil Procedure, claiming that the IIED claim has no basis in law or fact because the conduct alleged is not "extreme and outrageous" as a matter of law.

Roane filed a brief in support of his plea to the jurisdiction, attaching affidavits from him and Graves in support of his position, the school board policy, Dean's administrative complaint,[2] and a letter from Seguin ISD's counsel to Dean that stated that the administrative complaint had been resolved by Roane's resignation and that if Dean was not satisfied with the result she could appeal the decision pursuant to the board's policy. In his affidavit, Roane provided an alternative account of the events. He averred that Dean requested he attend the conference to meet vendors and prospective vendors, Dean's suitcase was broken so he helped Dean carry it to her room and she did not object, he removed his tie from sweating while carrying the heavy luggage but did not remove any other articles of clothing at any time, Dean and Roane had conversations regarding transferring Dean's husband to a special education position, and he did not seek a romantic relationship or make inappropriate sexual comments.

---

[2] Roane moved to seal the administrative complaint attached as an exhibit, which the trial court later denied. Roane has also appealed to this Court the denial of his motion to seal. Contemporaneously with this opinion, we also issue an opinion and judgment in that appeal. *See Roane v. Dean*, No. 03-19-00308-CV, 2020 WL _____ (Tex. App.—Austin April 30, 2020, no pet. h.) (mem. op.).

He also testified that they had text exchanges and other interactions over the next few days following that night that were fun, lighthearted, and exchanges of pleasantries. Dean testified that when he found out about the complaint, he voluntarily submitted to a polygraph examination that found no deception in his negative answer to whether he made certain inappropriate comments to Dean. He explained that he resigned his employment with no finding of guilt on February 28, 2017, and that Graves resigned effective June 30, 2017. Graves testified that Dean confided to her concerns and stress regarding family, marital, health, and financial issues.

Dean responded with supporting affidavits from herself, Roane, and Karl Hanner, her attorney during the administrative grievance process. Dean's affidavit tracked the account of the events related in her petition. Dean included an affidavit filed earlier by Roane to support her position that the events occurred outside the scope of Roane's employment because he testified within his affidavit that "[Dean] alleged that I made sexual advances of her in a private conversation while we are [sic] off-duty with no one present." Hanner's affidavit looked at the school board policy and concluded that because Roane resigned, there was no need for Dean to appeal and that Dean exhausted all administrative remedies available to her.

The trial court entered orders denying Roane's plea to the jurisdiction, rule 91a motion to dismiss, and motion to dismiss under section 101.106(f) of the Texas Civil Practice and Remedies Code. Roane appealed from the order denying his motion to dismiss pursuant to section 101.106(f). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(5). Roane also sought permission from the trial court to appeal the trial court's denial of his plea to the jurisdiction based on preemption and failure to exhaust administrative remedies. *See id.* § 51.014(d); Tex. R. App. P. 28.3. The trial court granted permission, Roane filed a petition for permission to take interlocutory appeal in this Court, and we concluded that the appeal is warranted and accepted

5

it. *See Roane v. Dean*, No. 03-19-00352-CV, 2019 WL 3404062, at *1 (Tex. App.—Austin July 26, 2019, order) (per curiam). For purposes of briefing and consideration, this case was consolidated with Roane's appeal from the trial court's order denying his motion to dismiss pursuant to section 101.106(f). *See id.*

## DISCUSSION

In these two consolidated appeals, Roane presents a primary issue and two alternative issues. As the primary issue, Roane argues that the TCHRA preempts Dean's common law IIED claim and therefore the IIED claim should be dismissed. Alternatively, Roane asserts that Dean's IIED claim should be dismissed under section 101.106(f) of the Texas Civil Practice and Remedies Code based on governmental immunity or under section 22.0514 of the Texas Education Code for failure to exhaust her administrative remedies. Because we conclude that Roane's preemption issue is dispositive to this appeal, we do not address his two alternative issues. *See* Tex. R. App. P. 47.1, .4.

We review de novo a trial court's order denying a plea to the jurisdiction based on preemption. *See Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016) (reviewing ruling on plea to jurisdiction under de novo standard of review); *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008) (conducting de novo review of ruling on plea to jurisdiction regarding whether TCHRA provided exclusive remedy and preempted retaliation claim under Whistleblower Act). Construing the pleadings liberally in favor of the plaintiff and looking to the pleader's intent, we determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court, but we must also consider relevant evidence submitted by the parties tending to negate the existence of jurisdictional facts when necessary to resolve the

6

jurisdictional issues raised. *Lopez*, 259 S.W.3d at 150 (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225, 27 (Tex. 2004)). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Suarez v. City of Texas City*, 465 S.W.3d 623, 633 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 228). Disputed evidence of jurisdictional facts that also implicate the merits of the case, however, may require resolution by the finder of fact, in which case the plea must be denied pending resolution of the fact issue by the fact finder. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). "If the evidence fails to raise a question of fact, however, the plea must be granted as a matter of law." *Id.*

"[A]brogation of common-law claims is disfavored" and "we will construe the enactment of a statutory cause of action as abrogating a common-law claim if there exists 'a clear repugnance' between the two causes of action." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010) (quoting *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000)). However, an IIED claim has a unique status as being, "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). It is "a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (citing *Hoffmann-La Roche*, 144 S.W.3d at 447). Thus, "[i]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant

7

to cover, a plaintiff cannot maintain an [IIED] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Hoffmann-La Roche*, 144 S.W.3d at 448.

In *Hoffmann-La Roche*, Zeltwanger sued her employer Hoffmann La-Roche for sexual harassment and IIED and her supervisor Webber for IIED. *Id.* at 441–42. She obtained a judgment against both after a jury trial, and the court of appeals affirmed. *Id.* at 442. Asserting that the IIED claim was a "gap-filler" and that there was no gap here when the TCHRA provided for a remedy, Hoffmann La-Roche appealed to the Texas Supreme Court; Webber did not participate in that appeal. *Id.* at 442, 446. The Court agreed with Hoffmann La-Roche that "[b]y combining her sexual harassment claim with the [IIED] tort, Zeltwanger has circumvented" the TCHRA, including its procedural mechanisms and caps on damages. *Id.* at 447. Because the gravamen of Zeltwanger's claim was really another tort under the TCHRA, the Court concluded her IIED claim should not be available. *Id.* at 447, 450; *see Waffle House*, 313 S.W.3d at 799, 813 ("Our view is that the TCHRA, the Legislature's specific and tailored anti-harassment remedy, is preemptive when the complained-of negligence is entwined with the complained-of harassment. . . . Where the gravamen of a plaintiff's case is TCHRA-covered harassment, the [TCHRA] forecloses common-law theories predicated on the same underlying sexual-harassment facts.").

Dean argues that *Hoffmann-La Roche* is distinguishable because it does not apply to bar tort claims against individual supervisors, citing *Dixon v. State Farm Mutual Automobile Insurance*, 433 F. Supp. 2d 785, 788–89 (N.D. Tex. 2006), and we agree. In his well-reasoned order in *Dixon*, Judge Godbey noted the general rule that corporate officers or agents are always primarily liable for their own torts even though principals may also be vicariously liable, and distinguished *Hoffmann-La Roche* as follows:

8

> There simply is no language in the TCHRA giving supervisors or coworkers immunity for common law torts, nor is there any language indicating the TCHRA was intended to displace all common law employment-related claims. . . . [To read otherwise] conflicts with the common law premise that a corporate employee or agent is primarily liable for his or her own torts [and] . . . results in a disfavored abrogation of a common law tort by implication from a statute. A better reading of section 21.051 [of the TCHRA], and one consistent with *Hoffmann-La Roche*, is that by extending a statutory remedy only against employers, the TCHRA leaves in place a "gap" with respect to supervisors and coworkers that can properly be filled by IIED. This reading of *Hoffmann-La Roche* makes it immaterial whether "the gravamen of a plaintiff's complaint" against a coworker or supervisor "is the type of wrong that the statutory remedy was meant to cover." The statutory remedy displaced common law IIED claims against *an employer* for the type of wrong that the TCHRA was meant to cover. Because the TCHRA does not cover claims against a coworker or supervisor, IIED claims against a coworker or supervisor have no such limitation. There appears to be nothing in either section 21.051 or *Hoffmann-La Roche* that would preclude a TCHRA claim against an employer and an IIED claim against a supervisor for the same conduct.

*Id.* (citations and footnotes omitted).

Nevertheless, between *Hoffmann-La Roche* and *Dixon*, the Texas Supreme Court decided *Creditwatch*—a decision that was not mentioned in *Dixon*. In *Creditwatch*, Jackson sued Creditwatch and its CEO Harold Quant, initially alleging numerous acts of sexual harassment in violation of the TCHRA but withdrawing those claims to allege only an IIED claim against both defendants based on Quant's sexual advances. 157 S.W.3d at 816. Creditwatch and Quant moved for summary judgment on the ground that the IIED claim was barred by preemption, which the trial court granted. *Id.* The court of appeals reversed and remanded, and Creditwatch and Quant appealed to the Texas Supreme Court. *Id.* Citing *Hoffmann-La Roche*, the *Creditwatch* Court noted that "Jackson's complaints all stemmed from Quant's lewd advances" and held that Jackson's complaints are covered by "other statutory remedies"—namely, the TCHRA. *Id.* Thus, "she cannot assert them as [IIED] claims just because those avenues may now be barred," and the *Creditwatch* Court reversed the court of

appeals' judgment and rendered judgment that Jackson take nothing from Creditwatch and Quant. *Id.* at 816, 818.

The *Creditwatch* Court did not distinguish in its analysis between Jackson's claims against the employer and its CEO Quant and resolved the case by applying its holding indiscriminately as to both defendants. *See id.*; *see also Martinez v. Computer Scis. Corp.*, No. A-05-CA-187-SS, 2005 WL 3414828, at *3 (W.D. Tex. May 16, 2005) (noting that although "the *Creditwatch* court did not articulate any reason for extending the *Hoffman-LaRoche* bar to supervisors or even explicitly acknowledge the fact that it was doing so," "there is no room to dispute the obvious impact of that decision:  a plaintiff may no longer bring an IIED claim against a supervisor for workplace harassment under Texas law").  And we can find no principled rationale to distinguish why *Creditwatch*'s holding should apply to the CEO in that case but not to Roane, as the superintendent, in this case.  *See* Tex. Educ. Code § 11.201(a) ("The superintendent is the educational leader and the chief executive officer of the school district.").[3]

---

[3]  Because the TCHRA "'is modeled after federal laws with the purpose of executing the policies set for the in Title VII of the federal Civil Rights Act of 1964,'" "federal case law may be cited as authority in cases relating to the Texas Act." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (quoting *Green v. Industrial Specialty Contractors, Inc.*, 1 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 1999, no pet.); and citing *Stinnett v. Williamson Cty. Sheriff's Dep't*, 858 S.W.2d 573, 576 (Tex. App.—Austin 1993, writ denied)).  Federal authorities have consistently interpreted and applied *Creditwatch* to preclude IIED claims against an individual supervisor.  *See Fisher v. Dallas County*, 299 F.R.D. 527, 537–38 (N.D. Tex. 2014) (collecting cases and dismissing IIED claim against individual defendant as preempted by TCHRA); *Calvert v. Brachfeld Law Grp., P.C.*, No. CIV.A. H-12_3683, 2013 WL 1289394, at *2 (S.D. Tex. Mar. 26, 2013) ("[T]he Texas Supreme Court has held that intentional infliction of emotional distress claims cannot be brought against an employer or a supervisor for workplace harassment."); *Mercer v. Arbor E&T*, No. 4:11-CV-3600, 2012 WL 1425133, at *10 (S.D. Tex. Apr. 21, 2012) (collecting cases and noting "court have found that employees' IIED claims against supervisors are precluded when there are other statutory remedies available against the employer"); *Muniz v. El Paso Marriott*,

Dean attempts to distinguish *Creditwatch* by claiming that the *Creditwatch* plaintiff had a TCHRA remedy while Dean did not. 157 S.W.3d at 816 ("As her complaints are covered by other statutory remedies, she cannot assert them as intentional infliction claims just because those avenues may now be barred."). But Dean does not explain how the *Creditwatch* plaintiff could have a claim against the CEO Quant while Dean would not have a claim against her superintendent Roane. Moreover, *Hoffmann-La Roche* provides that "a plaintiff's failure to establish his or her claim for sexual harassment does not mean that the plaintiff has a[n] [IIED] claim"; rather, "[i]f the gravamen of a plaintiff's complaint is the type of wrong that the statutory

No. EP-09-CV-274-KC, 2009 WL 4878619, at *3 (W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as anti-discrimination statutes."); *Rawlings v. Travelers Prop. Cas. Ins.*, No. 3:07-CV-1608-O, 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) ("[U]nder *Creditwatch* and numerous federal court decisions, a plaintiff cannot bring a claim for [IIED] against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against *plaintif*[*f*]'s *employer* based on the same conduct alleged."); *Hickman v. Amarillo Gear Co.*, No. A-06-CA-966-SS, 2007 WL 9701431, at *8 (W.D. Tex. Oct. 9, 2007) (noting *Creditwatch* is "controlling" and holding: "Plaintiff's state law IIED claim is barred because it rests on the same facts as his Title VII claims. The fact that his Title VII claims do not extend to the individual defendants creates no 'gap' to be filled by a state law IIED claim."); *Sublet v. Tyler Staffing Servs., Inc.*, No. 4:07-CV-025-A, 2007 WL 1467261, at *1 (N.D. Tex. May 14, 2007) (noting that "the *Dixon* court failed to discuss, or even mention, a 2005 opinion of the Texas Supreme Court expressly holding that a plaintiff's IIED claim against a supervisor was barred in this context"); *Pacheco v. Zanios Foods, Inc.*, 502 F. Supp. 2d 508, 512 (W.D. Tex. 2006) ("[A]n IIED claim based on underlying facts alleging sexual harassment is unavailable to plaintiffs under Texas law; the Texas Supreme Court has held that IIED claims premised on sexual harassment may not be brought against either an employer or a supervisor."); *Martinez v. Computer Scis. Corp.*, No. A-05-CA-187-SS, 2005 WL 3414828, at *3 (W.D. Tex. May 16, 2005) ("The ambiguity in the scope of *Hoffman-LaRoche* disappeared, however, when the Texas Supreme Court issued its decision in *Creditwatch*. There, the Court applied the *Hoffman-LaRoche* rule to a plaintiff's IIED claims against a former supervisor and held such claims were barred by the existence of statutory remedies for workplace harassment under the TCHRA."); *but see Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 982 (N.D. Tex. 2011) (neither citing nor discussing *Creditwatch* but noting: "Howe states that Andrews cannot rely on Title VII preemption, because he is not an employer. The Court agrees that Andrews cannot properly rely on Title VII preemption to argue for the dismissal of the IIED claim.").

11

remedy was meant to cover, a plaintiff cannot maintain an [IIED] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." 144 S.W.3d at 448.

Here, we cannot conclude that the gravamen of Dean's complaint is not the type of wrong that the TCHRA was meant to cover—and our decision is supported by the fact that Dean filed a sexual harassment claim with Seguin ISD. *See id.* at 445, 447 (holding that "[s]exual harassment is one form of prohibited employment discrimination" under TCHRA). Dean argues that there are three reasons why the TCHRA does not cover this "type of wrong": (1) Roane's conduct did not materially alter the terms, conditions, or privileges of her employment, (2) the conduct was not severe or pervasive, and (3) the employer took prompt remedial action. We disagree, especially given federal case law on these issues. *See id.* at 445–46 (noting that "federal case law may be cited as authority in cases relating to the [TCHRA]" because TCHRA "'is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964"). Dean's first two reasons concern the same requirement:

> Sexual harassment is said to affect a term, condition, or privilege of employment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

*Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 219 (Tex. App.—Austin 2010, no pet.) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The Supreme Court has described the 'abusiveness' standard as requiring 'extreme' conduct." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). As to the third reason, Dean asserts that Seguin ISD "took prompt remedial action" to claim that Seguin ISD would be excused from vicarious liability. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (holding

12

employer may avoid vicarious liability by showing employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior).

However, Dean already must prove that Roane's conduct "was extreme" to establish her IIED claim, *see Hoffmann-La Roche*, 144 S.W.3d at 445 (describing elements of IIED claim to include "defendant's conduct was extreme and outrageous"), and federal case law indicates that Roane's alleged conduct may be actionable as sexual workplace harassment, even though it occurred after hours at a hotel during a professional conference, *cf., e.g.*, *Burlington Indus.*, 524 U.S. at 748 (addressing allegations that included supervisor inviting employee to hotel lounge and telling her to "loosen up" when he remarked "about her breasts"); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60 (1986) (addressing allegations that included supervisor invited employee to dinner and during dinner suggesting they go to motel to have sex and making other sexual advances "both during and after business hours"); *Moring v. Arkansas Dep't of Correction*, 243 F.3d 452, 456–57 (8th Cir. 2001) (holding evidence supported jury finding of conduct "severe enough to alter the terms and conditions" when "on an overnight business trip" supervisor knocked on hotel room "clothed only in boxer shorts," "repeatedly insisted that [employee] 'owed' him for her job," and "touched her thigh and leaned in as if to kiss her" even though he was repeatedly asked to leave). Additionally, "it is well established that '[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim." *Henry v. CorpCar Servs. Hous., Ltd.*, 625 F. App'x 607, 611–12 (5th Cir. 2015) (quoting *EEOC v. WC&M Enters.*, 496 F.3d 393, 400 (5th Cir. 2007)), *cert. denied*, 136 S. Ct. 104 (2015). And vicarious liability automatically applies when the alleged harassing supervisor is "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Faragher*, 524 U.S. at 789 (noting

13

that president of corporate employer was indisputably within that class); *see Ackel v. National Commc'ns, Inc.*, 339 F.3d 376, 383–84 (5th Cir. 2003). Thus, whether Seguin ISD "took prompt remedial action" as to the alleged sexual harassment would not impact its vicarious liability when the alleged harasser is its superintendent. *See* Tex. Educ. Code § 11.201(a) ("The superintendent is the educational leader and the chief executive officer of the school district.").

Finally, Dean asserts that "Times change" and "Courts must change with them." In two recent cases, the Texas Supreme Court has implied that *Creditwatch*'s holding may no longer be applicable to a supervisor. *See B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 282 (Tex. 2017) (noting that "the TCHRA is a statutory scheme created to provide a claim for individuals against their *employers* for tolerating or fostering a workplace that subjects their employees to discrimination in the form of harassment" and that "the public policy [the TCHRA] advances is wholly inapposite to claims against individual assailants" (citing *Waffle House*, 313 S.W.3d at 803)); *Waffle House*, 313 S.W.3d at 803 (examining whether TCHRA preempts common law assault claim against employer and noting that "[t]he issue before us, however, is not whether [the plaintiff] has a viable tort claim against a coworker"). But both cases concerned suits against employers, not supervisors, and therefore did not abrogate or modify—or even mention—*Creditwatch*'s holding, which collapsed the distinction between employer and supervisor at least as to an IIED claim against a supervising CEO when the gravamen of the complaint is a sexual harassment claim that could be brought under the TCHRA. Although there may be persuasive reasons to conclude that *Creditwatch*'s holding should not apply to supervisors—as indicated by recent Texas Supreme Court precedent and federal case law[4]—that

---

[4] For example, Judge Cardone of the Western District of Texas has noted:

14

decision lies beyond our province. *See Robinson v. Home Owners Mgmt. Enters.*, 590 S.W.3d 518, 528 n.45 (Tex. 2019) ("It is not the function of a court of appeals to abrogate or modify established precedent." (quoting *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002))). We therefore cannot accept Dean's invitation to "change" with the "Times" and instead leave that to the purview of our high court, should it be so inclined. *See Lubbock County*, 80 S.W.3d at 585 ("Generally, the doctrine of stare decisis dictates that

---

> While the holding in *Creditwatch* is clear, as the IIED claims against *both* the corporate defendant and individual supervisor were dismissed, it must be observed that this holding represents a significant development in Texas law that the Texas Supreme Court undertook without much discussion or justification. The previous leading case on the subject [*Hoffmann-La Roche*] only held that the IIED claim was unavailable against the corporate defendant when the underlying facts supported a statutory claim against that same defendant as well. In that case, the court even left a $50,160 IIED judgment against the supervisor untouched, though in part because it was not raised on appeal. Overall, it is unclear how the logic of [*Hoffmann-La Roche*] necessarily extends to cover the facts in *Creditwatch*. The no-gap-to-fill argument explains why the availability of a statutory remedy against a certain defendant precludes using IIED to sue the *same defendant for the same conduct*. But why the availability of a statutory remedy against one defendant (the corporate employer) should shield a separate defendant (the individual supervisor) from liability—on the only claim available against that individual—remains unclear. While it is true that only a single recovery should be had for a single factual harm, even when multiple theories and multiple defendants are involved, that principle is generally applied only to regulate the judgment and collection stages of a case, not the pleading stage.

*Muniz*, 2009 WL 4878619, at *3 n.3 (citations omitted); *see Martinez*, 2005 WL 3414828, at *3 (noting court was sympathetic to criticisms raised by plaintiff that "the Texas Supreme Court must not have held as it did in *Creditwatch*, because: (1) the policy behind *Hoffman-LaRoche*—namely, the policy of guarding against the circumvention of the TCHRA's damages caps and limitations periods—does not support barring IIED claims against supervisors, who, as already noted, cannot be sued under the TCHRA; and (2) the *Creditwatch* court did not articulate any reason for extending the *Hoffman-LaRoche* bar to supervisors or even explicitly acknowledge the fact that it was doing so"); *see also Dixon v. State Farm Mut. Auto. Ins.*, 433 F. Supp. 2d 785, 788–89 (N.D. Tex. 2006) (explaining why *Hoffman-LaRoche*'s holding does not extend to supervisors).

15

once the Supreme Court announces a proposition of law, the decision is considered binding precedent.").

## CONCLUSION

For these reasons, we reverse the trial court's order at issue in Roane's permissive interlocutory appeal No. 03-19-00352-CV and render judgment granting Roane's plea to the jurisdiction and dismissing Dean's claim. We dismiss as moot Roane's interlocutory appeal No. 03-19-00307-CV.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith
  Dissenting Opinion by Justice Kelly

NO.  03-19-00307-CV        Dismissed as Moot

NO.  03-19-00352-CV        Reversed and Rendered

Filed:   April 30, 2020

16